The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Good morning everyone. I'm Chief Judge Howard. Judge Thompson and I would like to welcome Judge Arias to the court and to thank you Judge Arias for sitting with us and helping us out. We would also as a court like to thank all counsel for your sacrifices and flexibility in these trying times and if all goes well we'll have good arguments today without technical difficulties. Dan. Thank you Judge. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Joseph Baptiste. Appeal number 20-1400 and United States v. Roger Richard Bonci. Appeal number 20-1401. Attorney Dave Vincentis if you could unmute your device at this time and introduce yourself on the record. Good morning. May it please the court. Alexia Vincentis on behalf of the United States. Chief Judge Howard if I may I'd like to reserve three minutes for rebuttal. Yes. Thank you. The district court erred as a matter of law in granting the defendants a new trial. As to Baptiste the error lies in the failure to conduct the prejudice inquiry required by Strickland and as to Bonci it is in the granting of a new trial on the basis of conclusions lacking not only in record support but also recognition in the law. To begin with Baptiste the district court's memorandum in order fails to identify any concrete lines of defense that could have created a reasonable probability of a different result in light of the overwhelming evidence offered at trial. The government's opening brief in this case was replete with quotations from recordings because the evidence of the defendant's guilt came nearly entirely from their own words. The jury heard call after call in which the defendants discussed bribes either openly or in only thinly veiled terms and in fact the jury heard a recording in which Baptiste and Bonci discussed offering the prime minister's aid a bribe followed by a call in which Baptiste actually offered that bribe. It also heard evidence that Baptiste acknowledged upon being confronted with the FBI that he was in fact engaged in a bribery scheme. The district court's prejudice analysis failed to engage with this evidence notwithstanding Strickland's clear dictate that prejudice must be assessed in light of the evidence as a whole. And indeed in attempting to defend the district court's analysis Baptiste falls victim to the same mistake despite criticizing the government for spending much of its brief discussing the evidence at trial Baptiste himself spends much of his brief discussing the shortcomings of counsel that are not in dispute here. His discussion of the strength of the evidence is limited to two paragraphs that simply ignore vast swaths of the evidence offered at trial. The strength of that evidence set the threshold for prejudice comparatively higher and the district court's memorandum fails to explain how any of LaRoche's deficiencies could have led to a likelihood of a different result that is substantial and not merely conceivable. The district court purported to justify its result by reference to the doctrine of cumulative error but while we don't dispute that that doctrine applies in this context we disagree that it applies in the manner that the district court and the defendant suggest which effectively nullifies the second prong of the Strickland inquiry. Our understanding of cumulative error and one which we believe this court's case law supports is that it allows the aggregation of prejudice from deficiencies that might not be sufficiently prejudicial in isolation to warrant reversal. In other words it recognizes that 1 plus 1 is sometimes more than 2. But you can't aggregate prejudice from individual deficiencies without first determining that those individual deficiencies were in some way and to some extent prejudicial and you can't then determine whether the aggregate prejudice flowing from those individual deficiencies is sufficient to warrant reversal without considering that prejudice in light of the government's evidence. Counsel are you saying that that at least one of the errors must itself be prejudicial? That's correct that's correct the individual errors need not be alone sufficiently prejudicial when measured against the weight of the government's evidence but they must still be prejudicial and I believe that this court's cases support our understanding of cumulative error. That's not what Judge Howard asked you Chief Judge Howard asked you. Are you saying that one specifically has to be individually prejudicial before the cumulative error doctrine kicks in? Yes we believe the errors must be prejudicial they need not necessarily be sufficiently prejudicial to warrant reversal but there must be some measure of prejudice flowing from them. That's still not answering the question. One individually has to be prejudicial or it has to be an error before we can even look at the cumulative error doctrine and if that's what you're saying I would like to know what you're citing for that. Again and forgive me if I'm not conveying this clearly but our understanding is that any individual error need not alone warrant reversal. In other words if to use a rather crude analogy if the strength of the government's evidence is five you could well have a score of five you could well have an individual deficiency that results in a level of prejudice of say one. That alone would be insufficient to warrant reversal but you could have individual errors that have some level of prejudice to them that then add up to something more than five. So again we believe that the individual errors must work some level of prejudice even if that level of prejudice isn't sufficient to warrant reversal. Tell me why that should be so. I tend to think of this case through the following lens. Even if none of the errors by themselves are prejudicial that there's another option when all the errors get added up cumulatively the presiding judge could determine that there hasn't been a fair trial. That the cumulative nature of the errors is what results in the prejudice. Is there something wrong with that lens that I'm seeing it through? Because the reason I see it through that lens is that I think we should be deferring largely to the judge who sat through the trial. Well the district court's decision is entitled to deference to the extent that it applied the appropriate legal inquiry and respectfully the district court's prejudice analysis here reads as a rehash of its finding of deficient performance. It states that LaRoche failed to identify exculpatory material or material that could have supported offense but it doesn't say what that material is. Likewise it says that if he had been better prepared he might have been able to more effectively challenge the government's evidence but fails to say how that's the case and critically it fails to explain how these unidentified lines of evidence or inquiry could have led to a reasonable probability of a different result which again is a likelihood that is substantial and not just conceivable. And I think to refer this court to some of its own decisions the defendant here cites Dugas and this court engaged in extensive discussion of how specific lines of defenses that were foregone by deficient counsel could meaningfully have called into question the government's evidence which in those cases the court noted was entirely circumstantial. And the same approach is taken in the out-of-circuit cases that the defendant is citing. The defendant quotes some conceitedly broad language from the Tenth Circuit's unpublished decision and therefore non-presidential decision in Medlock but I would commend to this court's attention the Tenth Circuit discussed in detail against specific lines of defense that the attorney did not pursue and how those lines of defense could have cast doubt upon the government's ability to prove the elements of the crimes charged. And moreover in Rivera the Tenth Circuit sitting on bonk did the same. The defendant I think misreads that case as suggesting that one can aggregate deficiencies that are individually non-prejudicial but what that case in fact holds is that cumulative error only aggregates actual errors and the court recognizes that error in the ineffective assistance context is defined by reference to the two-pronged test step forth in Strickland. In fact in conducting its own ineffective assistance analysis there the court did so precisely as we argue it should have been done here with reference to concrete lines of defense measured against the strength of the government's evidence. The defendant has therefore cited no case and we are aware of none that supports this expansive view of cumulative error and we would argue that quite the contrary Strickland is clear actually absent an actual or constructive denial of counsel which for reasons I think is clear from the party's briefing does not apply here. Prejudice is required and the way to demonstrate prejudice as countless decisions illustrate is to point to specific actions neglected by counsel and analyze how those specific actions could have created a reasonable probability of a different result. Counsel would you unless the panel has additional questions on this point in your remaining three or four minutes could you talk about Bonsey and first of all tell me why ineffective assistance with respect to one co-defendant could never bleed over to the other? Well we think this court's decision in Sabatino makes clear that to the extent that the defendant is proceeding under a Sixth Amendment analysis that claim is foreclosed. We don't disagree however that Dugas offers an appropriate framework for assessing the problem that your honor has identified. The problem here though is that the the error that the district court relied upon simply is not cognizable as a matter of law. According to the district court its decision to grant Bonsey a new trial rested on its conclusion that his defense strategy was distorted as a result of LaRoche's deficiencies but as we've pointed out there's no record evidence that the substance of his defense was distorted. To the contrary what evidence there is indicates that the strategy that was contemplated and the strategy pursued were one in the same and in fact Bonsey and his opposition has not suggested otherwise. What Bonsey is relying on instead is the district court's conclusion that he had to say and do more than he might have otherwise preferred but there are two key problems with that conclusion. The first and as we noted in our briefing there is no record support for it but secondly and even more importantly having to take on a larger than cognizable form of harm. Bonsey has conspicuously failed to identify a single case granting a new trial on such tenuous grounds and we are aware of none. Cases applying a severance based framework to analyze claims of harm resulting from the deficiencies of a co-defendants counsel have demanded more. They've considered for example whether the defendant the different co-defendants counsel elicited damaging evidence that was not merely cumulative of evidence offered during direct. So what about LaRoche's insistence on pursuing the entrapment defense and didn't that undercut Bonsey's attempts to show that there was no conspiracy at all? Well in this regard I would urge the court to read LaRoche's opening in its entirety. There are indeed references to the FBI attempting to lure Baptiste into a bribery scheme but what LaRoche in fact argued was that Baptiste's understanding of what was going on was different. That what he understood was that he was being paid as a consultant and that both he and Bonsey repeatedly stated that they would do things only above board and never offered any bribes. I'm missing something here. So I thought the government acknowledges that this pursuing the entrapment defense was deficient performance. We're not challenging the notion that it was deficient performance but in terms of prejudice I believe that one does have to look to the entirety of the trial record and importantly here the entirety of the opening statement. There's no doubt that LaRoche pursued as he put it a quote-unquote backdoor entrapment defense but the suggestion in the defendant's brief that that amounted to wholesale admission that there in fact was a bribery scheme in which the defendant was taking part is just simply not borne out by the record. So to pick up where I left off, I do want to emphasize cases applying a severance-based framework have considered various types of prejudice that simply are not are not present here. Whether the defendant had to contend with evidence that he would have had to contend with in a trial of his own, whether there was offensive or egregious behavior on the part of co-defendants counsel and on the flip side they have considered and weighing the potential for any such prejudice various ameliorative factors that are present here including most importantly the fact that the defendant himself was represented by capable counsel who was able to cross-examine and examine witnesses as well as indications that the jury was instructed to and did in fact compartmentalize the case against each defendant. There is no such analysis of these types of factors in the district court's opinion and the mere reference to a resulting requirement that Bonsey's attorney had to work harder by saying and doing more than he might have preferred is simply insufficient as a matter of law. Unless the court has additional questions, Ms. Steven-Census, we will hear from Mr. Marks. All right, if you could mute your video and audio, thank you. Good morning, Mr. Marks. You may proceed when you're ready. Good morning, your honors. May it please the court. Daniel Marks for the appellee, Joseph Baptiste. District courts do not lightly set aside jury verdicts and here the district court was exceedingly deliberate and careful in making that decision. The context here is that after a nine-day jury trial with extensive post-trial briefing, a two-day evidentiary hearing at which trial counsel testified for an entire day, and extensive discovery at the prosecution's request, the district court made the determination that justice and fairness required a new trial because the district court's confidence in the The specific rulings the district court made were twofold. First, the trial counsel was deficient in almost every aspect of this representation from the pre-trial investigation through the delivery of a ghost-written closing argument. All of that error is conceded by the government on appeal. Second, the district court also found that Dr. Baptiste was prejudiced because when evidentiary landscape of the case and left the prosecution's case not subject to any meaningful adversarial testing led to a breakdown in the trial process and thus an unreliable and unfair verdict. That decision is due a high degree of deference both as a procedural and substantive matter. Procedurally, it's due deference because on a Rule 33 motion, and here the government is Rule 33 motion, ordering a new trial in the interest of justice. That decision is subject to an abuse of discretion review because it's necessarily based on, in this court's language, the district court's awareness and sense of the ebb and flow of the trial. The district court specifically referred to its own observations of what unfolded in the court over the nine-day trial as a critical part of its assessment. Counselor, I took the government's argument in part to be that the district court had to find prejudice flowing from at least one of the errors and no such finding was made. What do you say about that? I say two things. First of all, we can certainly discuss how individual errors here were, in fact, prejudicial, but I think, Chief Judge Howard, your summary of the cumulative error doctrine was absolutely correct. The purpose of the doctrine is to aggregate non-prejudicial errors and to determine whether they have a pervasive effect on the trial and affect the entire evidentiary landscape. That's language that flows directly from Strickland, which explicitly said there are no mechanical rules for a prejudice analysis and all errors should be looked at in the aggregate. That's a principle that's been explicitly adopted and applied by this court since Sepulveda. I don't think just because it's non-prejudicial we should dismiss Medlock out of hand. I think it's the closest case to this unusual procedural posture, the Tenth Circuit decision where Justice Gorsuch was sitting on the panel in which the Tenth Circuit affirmed the grant of a Rule 33 order for a new trial on ineffective assistance grounds and cumulative error was the issue in that case. And what the opinion says is when counsel's representation is deficient in several respects, we do not try to measure the result of each individual error. Instead, we evaluate how the errors affected the overall fairness of the proceeding with a site to Strickland. And that's exactly what the district court did in this case and it's exactly what First Circuit law required. So, Mr. Marks, how is this case distinguishable from U.S. v. Theodore where the First Circuit ruled that chronic did not apply and remanded to the district court for the development of the record as to where actual prejudice occurred? So, the difference between Theodore and this case is that in Theodore, the district court's decision was based on chronic. Now, as the court knows, the difference between chronic and Strickland is chronic is a presumed prejudice standard based on actual or constructive denial of counsel. We think the record here is so powerful. The deficiencies were so overwhelming and pervasive and multiple that there was a constructive denial of counsel and the district court could affirm under chronic. But our core argument is a Strickland argument. And the reason why it's different from Theodore is because once this court decided chronic was the wrong standard and Strickland applied, it had to then remand to the district court to do the Strickland analysis. That analysis had never been done. Here, there's no question the district court did the Strickland analysis. It cited the law, it explained the two prongs, and then it made explicit findings with respect to deficiency and prejudice. I think the government's real complaint about the prejudice analysis here is not that there was no finding of prejudice. There absolutely was. It's written in black and white in the district court's decision. The real complaint is how the district court described that. And I think it's telling that both in the opening brief and the reply brief, the government criticized the district court for not discussing the strength of the government's case. Of course, there's no requirement for the district court to write its opinion in any particular way or go through any rote incantation of the summary of the government's case. That itself would be the sort of mechanical rule that Strickland explicitly rejects. I think we can reasonably infer from this case that an experienced district court judge, after sitting through a nine-day trial, hearing all the evidence, certainly had in mind as a factor that the strength of the government's case weighs into the prejudice analysis. It would be supremely ironic in a Strickland case where the court makes every effort to assume competence on the part of lawyers, unless there's a showing of incompetence, to assume that the district court was somehow incompetent. In fact, the law in the First Circuit is the opposite. We assume in the ordinary course district courts know the law and correctly apply the law, regardless of whether they say in their opinions exactly what the government wishes they might say. Mr. Barks, what is it about the errors that would cause us to conclude that there would be a likely different outcome? Well, so it depends on the errors, Your Honor, and there are a few. So let me give you what I think are some of the strongest examples. One, Chief Justice Howard has already noted, and that's the suggestion of some kind of backdoor or entrapment-like defense, which implicitly conceded that Dr. Baptiste had somehow been to do any pretrial investigation or to review the discovery, left the trial counsel completely unable to, he was surprised by the evidence as it unfolded at trial, completely unable to subject that evidence to any adversarial testing. Before you move on, on that point, at the time that you filed this motion for new trial, had you had an opportunity to go through the evidence to see what could possibly have been presented that wasn't presented? So the answer is yes and no, Your Honor. So we were certainly not in a position to go through all of the voluminous, the recordings in this case, the hundreds of hours of recordings, a small subset of which were selected and played at trial. Many of those recordings, and I see my time is up, but please continue. Sorry, my own timer, I'm sorry about that. Many of those recordings were in Haitian Creole, needed to be translated, so we weren't in a position to do that on an expedited basis on the Rule 33 motion. However, we did conduct and begin to conduct investigation, and we've submitted affidavits, which are in the record, from people like Pierre Leger, from Roger A. Josaphat, from people who could have testified, for example, to Dr. Baptiste's lifelong commitment in charitable works in Haiti, to the practice of paying cash bonuses to employees in his dental clinics, to the practice of using social development programs as part of public work projects, and as part of legal lobbying. So we were able to begin to assemble a factual record based on our own post-trial investigation of the types of evidence effective trial counsel would have presented in this case, and which would have created a reasonable doubt. Unless the Court has no further questions, I thank you for your time. Thank you, Mr. Marks. If you would mute your audio and video, we'll hear from Mr. Yagoda. Mr. Yagoda, would you... There you go. Everything except for, I can't hear you. Can you hear me now? Yes. Okay, good morning, and may it please the Court. Jay Yagoda on behalf of the appellee, Richard Bonci, the Court should affirm the District Court's new trial order as it relates to Bonci. Judge Girod's ruling relating to Bonci rests on a straightforward application of Rule 33. Now, I know this Court is very familiar with the new trial standard, but I think Judge Lynch explained it best in the United States v. Carpenter decision that we cited at page 27 of our brief, in which a new trial order actually was affirmed by this Court. In that opinion, Judge Lynch said the grant of a new trial, quote, may be triggered by a myriad of circumstances. Rule 33 wisely does not attempt to characterize those circumstances so as to limit a trial judge's authority to rule on a timely motion for new trial. In that case, Judge Lynch observed that the experienced trial judge who sat through the trial and the closing concluded that the balance had tipped too far within the gray zone and that the interest of justice required a new trial. In that case, Judge Lynch said an appellate judge cannot say that the trial judge's conclusion was unreasonable there. And I submit that the same holds true here as it relates to Bonci's claim. Judge Burroughs watched this trial, watched the evidence presented, watched the witnesses, and observed the jury for a case in which Baptiste Trial's counsel essentially all but gave up. And after having observed the sequence of events, determined based on her own observations that Bonci was prejudiced by having to shoulder the entire load of the defense in this conspiracy case where these two defendants were on trial for conspiracy. Rule 33, which Judge Burroughs applied in reaching this conclusion as to Bonci specifically, is the final stop gap for a trial that goes off the rails, leading to prejudice that results in manifest injustice. Granting a new trial is one of the most discretionary calls that a district court judge can make, and they rightly reserve it for spare and use. And had Judge Burroughs denied Bonci's new trial motion here, we would be in the exact same position that the government is in, and we'd face a difficult challenge convincing this court to reverse because of those discretionary judgments. Mr. Yagoda, part of Mr. Bonci's strategy was putting forward a defense that he wasn't involved in any kind of conspiracy and that Mr. Baptiste was in fact the bad guy in this situation. Do you agree with that? Yes, Your Honor. And so how was he obstructed in putting forward that defense? Your Honor, I submit that Bonci's counsel was able to do the best he could to present that defense to the jury, but at the same time he was sitting there with his co-defendant who was not defending his case whatsoever. So when witnesses came on the stand and Bonci's counsel had to cross-examine the government's witness after witness after witness, the perception to the jury was that this was a case solely against Bonci and the conspiracy scheme all on his own. So my submission to Your Honor is that that was the perception to the jury. This was a conspiracy case where both the defendants were linked by the allegations and the evidence, but the government, the primary focus of the government's case was on Baptiste based on the number of recordings against him and the witnesses that presented. However, Bonci's counsel had to get up and cross-examine all of the witnesses on that evidence. So the jury perceived this case as more strongly against Bonci. And LaRoche essentially, Baptiste's counsel essentially gave up the case. The government concedes that Bonci's counsel and new trial order. And then when Baptiste... Is the thinking then that Mr. LaRoche was so deficient that it perhaps appeared to the jury that he was just giving up because Mr. Baptiste was guilty? I think that's part of it, Your Honor. And I do think that the other half of that was primarily against Baptiste, Bonci's counsel having to get up and basically defend the entire case, which was a conspiracy case where the parties were linked by the allegations and the evidence. From the jury's perception, it would have been difficult for the jury to unlink the two defendants based on the evidence and how it was presented. But that wasn't the only type of consideration that the district court considered. She also had her own personal observations from what was presented at the trial based on the witnesses being presented and what the jury likely perceived. Bonci's counsel in this case had to take on the primary defense. The government doesn't dispute that. The government says there's no evidence to show that Bonci's counsel had to play an outsized role, but the government itself acknowledges that Bonci's counsel had to lead the defense. This was a conspiracy case that originally started with an original indictment against Baptiste alone. It was only a year later that the government filed a superseding indictment against Baptiste to include him in the offenses. So this case was primarily against Baptiste from the gecko. Yet at trial, Bonci was forced to essentially defend both of the defendants and while doing so was subject to the perception of the jury that both of these defendants were of conspiracy, which is presumably why the jury convicted Bonci of conspiracy. But to harken back to one of Judge Thompson's questions, how did that set of circumstances prevent Bonci's counsel from de-linking the two of them? So all I can say to that, Your Honor, is that from the cold record, it's difficult to provide a clear answer because Bonci's counsel had to do so much at trial. I think it would have been impossible to de-link the two of them. Because the government presented the witnesses and Baptiste's counsel essentially gave up and stopped questioning any of the witnesses. It was Bonci's counsel who had to take the lead. Then let me ask it a different way. What was or what is the proffer that counsel would have been able to de-link them? So I can provide you an example. In the final governmental witness, the case agent Twombly, he was one of the government's major witnesses. He was the last witness of the government. And through that witness, the government entered 26 exhibits that were introduced and 18 of them were audio recordings. At least 18 of them were audio recordings. And most of those recordings contained Baptiste. Some of them had Bonci, but most of them were recordings relating to Baptiste's involvement in this case. And during that testimony, which Baptiste's counsel did not cross-examine this witness on, the witness explained the wiretap process, but this was on Baptiste's phone. That witness discussed and interpreted the use of coded language, but those were Baptiste's words that were interpreted. For example, he used the word Christmas list at the time of the holidays as a cash payment or a bribe. And this was entirely unchallenged by LaRoche. As a result, the net effect of this testimony is that Bonci's counsel essentially had to cross-examine the witness on evidence that pertained to Baptiste's involvement. But for purposes of protecting his own client's interests, what's unfair about that? Your Honor, Bonci's counsel certainly had to cross-examine the witness to protect his own rights. But I'll submit that in a case where it involves two co-defendants on a conspiracy charge, where the other defendant's attorney does not question the witness at all, where a majority of the evidence relates to that witness, there's a prejudicial effect on the defendant whose counsel is questioning the witness. Wait a minute. Before you move on, I'm still trying to understand the point that you're trying to make. My assumption is that Mr. Bonci's counsel listened to the recordings, made all of them, did an independent analysis on translation correctness, and was otherwise thoroughly prepared to cross-examine on what Christmas meant, what Christmas card meant. And if he did that, I still don't quite understand how Mr. Bonci was prejudiced by having a well-prepared attorney. Your Honor, forgive me if I haven't responded to that question before, but my response would be, based on the judge's observations and what the jury likely perceived after Baptiste's counsel essentially gave up, is that the evidence against Baptiste that might have only involved Baptiste applied to both of them equally and maybe gave it more credence than it deserved. And the case that I could point you to, that there are no cases that are on all fours with this case. I think this is a very unique case. It's not very often. And I agree with the government that there are defendants in multiple defendant trial cases where counsel are represented by attorneys with different skill levels, but it's not the case like this one where one of the defendants... No, but how would it have been any different if Baptiste's counsel had done the cross-examination? The same risks would be there, wouldn't they? Even if he had done so competently, he could have had a defense that didn't help Bonci. Bonci? That's certainly true, Your Honor, but what I submit is the jury's perception of Bonci's counsel taking an oversized role in the defense of cross-examining the witnesses swayed the jury into convicting the defendant along with Baptiste. If I may, the way I look at this is that Bonci's counsel was bound by his duty of loyalty to his client to prepare his case and present his case and do whatever actions needed to perform that trial to advance Bonci's defense. And anything more or less than that was not expected of him and should not have been done. So I still struggle with the fact that he was bound to come to Baptiste's rescue because Mr. Laroche was deficient. Again, I think to pinpoint the question is what exactly did he do different that he wouldn't have done if Mr. Laroche would have been less deficient? And to point to the example of Special Agent Trombley's testimony, he might not have questioned him as extensively on cross-examination based on evidence that related only to Baptiste. We're looking at this in retrospect, but the judge was sitting there watching the trial take place. And from her vantage point and in viewing the witness testimony and the juries watching the witnesses testify and assessing credibility, I think it's this on the record before the court, it's the appellate court's role not to second-guess the district court's view of what was transpiring live in front of her while the trial was going on. And where would the Court of Appeals draw the line in future conspiracy cases where you have inefficient assistance of counsel for one alleged co-conspirator and you have competent counsel for the other? Where would Judge Thomson and Judge Howard draw the line in future cases? Your Honor, I think the line has already been drawn based on precedent. I think Rule 33 is the rule that Judge Burroughs applied in this case. It's the rule that judges are often called to apply at the end of trials when the losing party moves for a new trial. And this court has said time and again that the use of the new trial is to be exercised sparingly. And I think that Judge Burroughs struck the right balance here. And based on her perception of what happened at the trial and her observations determined and could not be confident in the outcome based on what took place relating to Baptiste's counsel essentially giving up and Bonci's counsel having to take the lead in this conspiracy case where the both defendants were linked by the allegations and being tried together. Let me ask the judges if there are additional follow-up questions. I just had one quick one if you don't mind. We're looking at a cold record and you're absolutely right. We don't know what people were doing in the courtroom. Was Mr. Baptiste's attorney doing anything other than being quiet though? Was anything weird going on with him? There's nothing reflected in the record, Judge Thompson. I believe he was just sitting there at counsel table quiet. There's certainly nothing reflected in the record to show that he was physical behavior or speaking loudly. But I will just as a final point point the court to the Tarango decision from the Fifth Circuit that we cited in our briefs because I do think it presents a comparable situation where or an analogous situation where the co-defendant in a conspiracy case was tried with the defendant who was in absentia during that trial. And the defendant who was present at trial had to defend the whole case on her own. And with that, I would thank you for your time and ask the court to affirm. Thank you, Mr. Yagoda. If you would mute Ms. DeVincentis. Thank you. Baptiste spoke at length about the notion of fundamental unfairness and the overwhelming nature of it here. But invoking fundamental unfairness is not a substitute for Strickland. It is Strickland that sets forth the test for determining whether or not the fundamental fairness of the proceedings is called into question. The court there expressly stated that unless a defendant can make both showings of deficient performance and prejudice, it cannot be said that the conviction was done for a serial process that would result unreliable. And likewise, the court recognized in Gonzalez-Lopez that it's not enough to simply say that the errors pervaded the entire trial. The court there reiterated that a showing of prejudice is required because that stems from the very definition of the right at issue. If and when counsel's ineffectiveness pervades a trial, it does so through identifiable mistakes. Baptiste would have inferred that the district court engaged in that analysis, but the district court here chose to expound upon its rationale in a written memorandum in order. And the rationale that it expounded with respect to prejudice, we believe evinces a failure to engage in the appropriate inquiry. And indeed, the court's extensive discussion of the evidence of deficiencies only serves to further highlight its lack of discussion of the evidence at trial. What is more, we would submit that Baptiste's very capable new counsel has failed to identify any lines of defense that create a reasonable probability of a different result. They have not identified any exculpatory material. They've not specifically identified any lines of cross-examination. Counsel, how do you respond to what your brother counsel did point out? The affidavits that were submitted, the witnesses who could testify about Mr. Baptiste's other endeavors in Haiti. I mean, that is, that would be, some of that certainly would be permissible at retrial, or the fact that an affirmative defense in a case like this is that the other laws of the other country permit such political contributions. I mean, none of that came up here. And that's kind of concrete factors. Counsel, I don't know if you can hear me, but we're having some trouble hearing you. If I may judge, I wonder if counsel were to mute her video, if it might help with her audio. Sometimes that helps. Sure. I apologize if as a result I am trying to jump in. To Judge Chong's question, in our view, the defense case that is at worst one of nullification, which the Supreme Court in Strickland specifically said is not part of the inquiry analysis, and at best it's tangential. One can put forth witnesses to demonstrate that Baptiste may not have needed to pay a bribe, and one can put forth evidence to show that certain of his actions were not inherently illegal. But whether he needed to pay a bribe doesn't answer the question of whether by agreeing to give campaign contributions with the intent of inducing a government official to give something in return, or by agreeing to make charitable contributions, 20% of which would go into the pocket of the politician, that those lines of inquiry simply  and we do not believe create a reasonable probability against a substantial likelihood of a different result. It certainly goes to the issue of the prejudice that he suffered as a result, because even though it may not necessarily counter the allegations, it certainly is evidence that he did not engage or intend to engage in conspiratorial conduct if this additional evidence had been put forward. In our view, your honor, even putting that that evidence forward would fail to call into question the jury verdict in the case to create a likelihood of a result that substantial and not reasonable. Questions from the court? If I may, just on Bonsi, I think the government's questions hit right at the point. Bonsi was represented by a very capable counsel, and to the extent that certain evidence went unchallenged as he complained, that was not by virtue of LaRoche's deficient presentation alone. It was also by virtue of a reasoned strategy, the strategy of Bonsi's counsel, whose effectiveness is not in his. That concludes argument in this case. Attorney DeVincentis, Attorney Marks, and Attorney Yagoda, you should disconnect from the hearing at this time.